**John Charles WALL, Petitioner,**

v.

**TRINITY SAND AND GRAVEL COMPANY, Respondent.**

No. A–9415.

Supreme Court of Texas.

June 5, 1963.

Rehearing Denied July 10, 1963.

Beck & Beck, Beaumont, for petitioner.

Crutchfield & De Cordova, Beaumont, for respondent.

CULVER, Justice.

John Charles Wall sued Trinity Sand and Gravel Company to recover the balance claimed to be due him as a result of the exercise of an option by Trinity to extend the term of a noncompetitive agreement entered into between the parties. Judgment was rendered by the trial court in Wall's favor for the amount prayed for, on the premise that Trinity had chosen to extend the agreement for a term of four years and became obligated to Wall for the full consideration at the rate of $5,000.00 per year. That portion of the trial court's judgment has been reversed and rendered by the Court of Civil Appeals. 363 S.W.2d 301.

The case was tried upon an agreed statement of facts which, so far as material here, consists solely of documentary evidence, namely, the noncompetitive agreement executed by Wall and the subsequent correspondence pertaining thereto passing between the parties. They stipulated that the case presented only questions of law.

The option agreement reads as follows:

"* * * the undersigned hereby grants to said Trinity Sand and Gravel Company the option to extend this agreement beyond the term of my employment by the said Trinity by paying the undersigned at the rate of Five Thousand ($5,000.00) Dollars per year for such additional time, but in no event to exceed ten (10) years from date hereof. * * *."

The Court of Civil Appeals construed the contract to provide that Trinity could in no way exercise the option to extend except by payment to Wall of the consideration in cash. That court held that since Trinity had paid to Wall the sum of $5,000.00 it had thereby exercised the option to extend for a period of one year and

no more, and therefore Trinity was not obligated in any additional amount.

Conceding that the Court of Civil Appeals correctly construed the contract, yet in our opinion the liability of Trinity cannot be disposed of on that premise for we conclude that the parties subsequently agreed that the option might be otherwise exercised.

Wall's employment with Trinity was terminated on October 31, 1960. On that date he wrote Trinity in reference to the noncompetitive agreement as follows:

> "I now call upon you to either exercise this option or relieve me therefrom. Though said agreement did not provide for a time or manner in which said option should be exercised, I hereby give you two weeks from this date within which to exercise or not exercise same, and if you exercise same, to provide the period of time you wish, and request that official notification of your action be made in writing and directed to me in care of J. R. Beck, P. O. Box 149, Beaumont, Texas. If you have not exercised such option within the two weeks period, I will consider myself relieved therefrom."

On November 15th Trinity replied: "We hereby exercise the option to extend that agreement for four years from October 15, 1960."

■ It was Mr. Wall's understanding, as stated in his letter, that the agreement was silent as to the time or manner in which Trinity could exercise the option. He requested that Trinity notify him by letter of its decision. The letter constituted an offer to modify the terms of the contract in regard to the manner of exercising the option and this offer on Wall's part was accepted by Trinity's reply. We believe that by this exchange the obligation of both parties became fixed and the necessity of exercising the option only by paying the cash consideration was abrogated by mutual consent.

By letter of January 3, 1961, Wall recognized that Trinity had exercised the option for four years and called upon it to pay the full contract price for that term of years.

Then on the following 25th of January Trinity wrote enclosing its check for $5,000.00 reciting that it was in payment for an extension of one year on the agreement and reaffirmed its exercise of the option to extend for four years as follows:

> "This has reference to our letter of November 15, 1960, in which we exercised our option by notifying Mr. Wall of our extension of the said noncompetition agreement until October 15, 1964. This check is in payment for the first full year, through October 31, 1961."

■ Trinity insists that Wall had no power to alter or revoke the offer in the option contract, citing Corbin on Contracts, Vol. 1, § 39. We quite agree that after an offer has once been made in a manner that is sufficient to make it irrevocable it cannot be varied or revoked by the offeror unilaterally. But that is not to say that both parties cannot subsequently agree to modify the terms of that offer and the manner of acceptance.

Professor Williston in his Contracts, Third Edition, Vol. 1, § 76, p. 251, states the rule as follows:

> " * * * Even though the offer prescribes as a condition and not merely a suggestion a particular mode of acceptance, a different mode adopted by the acceptor will become effectual if the offeror thereafter manifests his assent to the other party but it seems not otherwise."

■ Trinity says that there was no intent on its part to modify the terms of the contract by its letter of November 15, 1960, for the reason that this letter was in reply to Wall's letter of October 31st which requested Trinity to notify him as

to its intention with respect to exercising the option. Apparently Trinity construes its letter as being a notification that it merely intended to exercise the option at some later date by paying the consideration subsequently. We are bound to gather the intention of the parties from what they have actually written. Wall's letter expressly calls upon Trinity to take action within a period of two weeks and to give him "official notification" in writing. In reply to that letter Trinity gave notification not of any future intention, but of a present and final exercise of the option.

Trinity further contends that its letter of January 25th was an offer on its part to exercise the extension option for a period of one year; that Wall did not accept this offer, but in fact made a counteroffer to Trinity of an extension of three years and eleven months for the sum of $19,791.66 and since the counteroffer was not accepted by Trinity there was no contract. This contention might be correct if Trinity's letter of January 25th had been written in response to Wall's letter of October 31st. But it had already exercised the option by its letter of November 15th. Trinity cites the case of Dreyfuss & Son v. Benson, Tex. Civ.App.; 239 S.W. 347, as being analogous to the situation here. In that case the employee had granted to his employer the option to purchase his stock in the company at its book value. The employer wrote the employee that he had exercised this option according to its terms. The court held that the transfer of the stock would not be affected until payment had been made therefor, and that the employee had the right before parting with title to satisfy himself as to the value of the stock by an examination of the company's books. The court did not say that the employer had not exercised the option or was not bound to pay for the stock. We do not see the application of that case to the facts here.

The only reasonable construction that can be given to Trinity's letter of January 25th is that it reaffirmed the exercise of the option for a period of four years and agreed to pay the balance of the consideration of $5,000.00 per year in three annual installments. Wall, on the other hand, insisted that the full consideration was due and payable in advance for whatever period of time the agreement might be extended. He accepted the $5,000.00 tendered by Trinity and applied it as part payment.

We agree with the conclusion reached by the trial court that when Trinity exercised the option to extend the agreement for a four-year term it then became obligated to pay Wall the full consideration for the entire term. Implicit in the agreement, if not so expressed, was the intention of the parties that for whatever term Trinity might choose, the whole consideration for that term would be due and payable in one sum and not in installments. The obligation assumed by Trinity was to pay Wall "at the rate of $5,000.00 per year *for such additional term*". Under this contract the term could be extended for any period of time not to exceed ten years, but the option was not a continuing one. Trinity was not entitled to exercise the option by the year.

No contention has been made here or in the Court of Civil Appeals that the consideration for the exercise of the option was not to be paid in advance. Trinity's position in the Court of Civil Appeals was, that if the court determined that Trinity had exercised the option for a term of four years, the consideration would be payable in four equal annual installments of $5,000.-00 each. In conformity to that understanding it paid for the first year in advance.

■ Trinity bases this contention on its interpretation of the phrase contained in the option agreement, namely, "by paying the undersigned at the rate of $5,000.00 per year". We disagree with that contention. This phrase only furnished the basis for determining the whole amount of the consideration to be paid, depending upon the length of the term for which the option was exercised. It is tantamount to the use of the words "at the rate of $100.00 per acre"

in ascertaining the total price of a tract of land. It is likewise similar to an employee's salary which is set at so much per annum. The words "per annum" or "per year" refer to the period of employment and the amount of the annual salary, not to the time of payment. Scott v. Graham, 156 Tex. 97, 292 S.W.2d 324.

 We therefore hold that Trinity Sand and Gravel Company made a valid and binding contract with Wall to pay him the sum of $19,791.66 [1] for his agreement not to compete for a period of approximately four years. We therefore reverse the judgment of the Court of Civil Appeals in so far as it modified the judgment of the trial court and affirm the judgment of the trial court.

GREENHILL, Justice (dissenting).

The offer by Wall was a classic example of a unilateral, as opposed to a bilateral, form of contract. Wall's offer was to be accepted by *action,* and not a *promise* of action. His offer was that if Trinity would *pay* him $5,000, he would not compete for one year. He did not ask for a *promise* of payment, and a mere promise to pay could not constitute an acceptance of that offer.

In like manner, Wall gave Trinity the option [an offer] that if each year for 10 years Trinity would do the act required, i. e., *pay* $5,000, he would refrain from competing for such period of time. Again, the unilateral offer called for the doing of an act, not a promise to do an act.

Trinity had paid Wall $5,000. On the basis of that act, there was a binding unilateral contract for one year. But Trinity could not accept the option or offer for a longer period of time by any promise or agreement to pay. The Court of Civil Appeals so held, and I agree with the opinion of that court. 363 S.W.2d 301.

1. The uneven amount is accounted for by the fact that Trinity chose to extend the agreement for four years beginning October 15, 1960, as Wall's employment

The majority has passed over this issue, which I regard as the main one in the case, and has found a completely new contract in the correspondence leading to this suit. In my opinion there was no meeting of the minds of the parties to any new contract. There being no binding new agreement, Trinity should not be held liable thereon.

was not terminated until October 31st. So the extension was for four years less 15 days.